FILED

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

· 2014 DEC 12  P 12: 02

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CREATIVE TOUCH INTERIORS, INC.<br>d/b/a HD SUPPLY INTERIOR SOLUTIONS,<br>3100 Cumberland Blvd., Suite 700<br>Atlanta, GA 30339<br><br>         Plaintiff,<br><br>v.<br><br>BRUCE HORNE,<br>Serve:<br>41584 Tring Lane<br>Aldie, VA 20105<br><br>ADVANCED FLOORING<br>AND DESIGN, LLC,<br>Serve:<br>Registered Agent<br>Jeffrey M. Fenton<br>8432-8436 Kao Circle<br>Manassas, VA 20110<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:14cv1704- TSE/JFA |

## COMPLAINT

COMES NOW the Plaintiff, Creative Touch Interiors, Inc. d/b/a HD Supply Interior

Solutions, by counsel, with this Complaint against Defendants Bruce Horne (hereinafter

"Horne") and Advanced Flooring and Design, LLC (hereinafter "AFD") (collectively, the

"Defendants") and states as follows:

## PARTIES

1.     Plaintiff Creative Touch Interiors, Inc. d/b/a HD Supply Interior Solutions

(hereinafter "HDSIS") is a Maryland corporation with its principal place of business in Atlanta,

Georgia.

2.      Defendant Horne is a citizen and resident of Aldie, Virginia. He was employed by HDSIS for over twenty-one (21) years. For the last few years of his employment, he served as a Senior Account Executive in HDSIS's Reston, Virginia office until his resignation on September 2, 2014.

3.      Defendant AFD is a Pennsylvania limited liability company with its principal place of business in Montgomeryville, Pennsylvania. The members of AFD are James J. DeGeorge (hereinafter "DeGeorge") and Jeffrey Fenton (hereinafter "Fenton"). DeGeorge is a citizen and resident of Pennsylvania. Fenton is a citizen and resident of New Jersey. DeGeorge is a former employee of HDSIS.

4.      AFD is in direct competition with HDSIS.

### JURISICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon the diversity of citizenship of the parties and that the amount in controversy is in excess of $75,000.00.

6.      This Court has personal jurisdiction over the parties as Defendants transact business in the Commonwealth of Virginia and committed improper acts in, among other places, the Eastern District of Virginia.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Horne resides within the venue of this Court, and a substantial part of the events giving rise to the claims occurred within this venue.

### FACTS

8.      HDSIS is a leading provider of interior finish solutions to the construction industry. It offers turnkey project management, supply and installation of multiple interior

product options and concierge level design center services. HDSIS has more than 50 design centers in 24 states and provides services in 38 states, including Virginia, Maryland and the District of Columbia. HDSIS customers include homebuilders, homebuyers, project owners, commercial contractors and architects.

9.      In the residential market, most of the major homebuilders in the U.S. contract with HDSIS to supply interior finish products, quality fabrication and installation services.

10.      In the commercial market, HDSIS provides interior finish solutions to owners, developers, general contractors, construction managers and design builders for multifamily, senior living, office buildings and apartment complexes.

11.      The primary products provided by HDSIS include flooring, such as carpet, hardwood, tile (floor and wall), natural stone, vinyl, laminate and LVT, and window coverings, countertops and cabinets.

12.      HDSIS employed Horne most recently as a Senior Account Executive responsible for its customers in Virginia and Maryland.

13.      As a Senior Account Executive, Horne was responsible for building and maintaining customer relationships in his territory. His role was not just limited to sales, but also focused on relationship building and required him to be the primary point of contact for HDSIS customers throughout the entire project process from sale through installation. It was expected that Horne would serve as the face of HDSIS to its customers.

14.      In performing his duties as a Senior Account Executive, Horne served as the liaison between customers and HDSIS sales management, purchasing and operations to ensure customer satisfaction. He identified unique project requirements for customers and developed a project management strategy, in conjunction with the sales team, to meet the customers' needs.

15.     Horne worked closely with HDSIS Sales Support and Estimating teams in using sophisticated and detailed tools developed by HDSIS to optimize and determine quantities and pricing to competitively bid for customer projects.

16.     As a result of his responsibilities and duties, Horne became intimately familiar with the confidential business information of HDSIS, including pricing models, project procedures and processes, business and marketing strategies, product and service offerings, and other confidential, proprietary, trade secret and highly valuable information belonging to HDSIS.

17.     As the face of HDSIS and by virtue of the customer relationships Horne developed and maintained on behalf of HDSIS, Horne gained the trust and confidence of HDSIS's customers and developed significant goodwill for HDSIS with its customers, including, but not limited to, Weyerhauser Real Estate (Winchester Homes, Camberly Homes, Everson Homes), NVR (Ryan Homes), M.D.C. Holdings (Richmond American), and Craftstar Homes. Moreover, he gained an intimate understanding of the customers' needs and preferences for current and future projects.  HDSIS spent significant resources to foster Horne's ability to establish and maintain these customer relationships.

18.     During his employment with HDSIS, Winchester Homes was Horne's largest customer.  Winchester Homes also is a significant client to HDSIS overall.  In 2013, Winchester Homes was HDSIS's sixth (6th) largest customer in the East region by revenue, and second (2nd) largest customer in the East region by margin.

19.     Horne's access to and knowledge of HDSIS's confidential, proprietary and trade secret information, combined with the close relationships he developed with customers on behalf of HDSIS, place him in unique position to unfairly compete against HDSIS for the business of those customers.

## HORNE'S RETENTION AGREEMENT

20.     On September 27, 2010, in recognition of Horne's success and contributions as a

Senior Account Executive in developing and maintaining customer relationships, HDSIS

awarded Horne a retention bonus of $35,000.00.  A true and accurate copy of the letter and

attached agreement advising Horne of the bonus (hereinafter the "Horne Retention Agreement")

is attached hereto as Exhibit A.

21.     In order to receive the bonus, and to protect the customer relationships of HDSIS,

Horne was required to agree to the terms and conditions of the Horne Retention Agreement.

Among other terms, Horne was required to agree to the following:

> You further agree that for a period of one year following the Termination Date, you will
> not directly or indirectly solicit or attempt to solicit any business related to the business
> of the Company existing as of the Termination Date from any of the Company's
> customers or suppliers with whom you had business contact or about whom you received
> Confidential Information during the one-year period prior to your Termination Date.

(hereinafter the "Horne Retention Non-Solicit terms").  The Horne Retention Agreement further

provided that, "[t]he above Non-Solicit terms shall not apply in the event you are involuntarily

terminated for reasons other than cause."

22.     On October 12, 2010, Horne endorsed the Horne Retention Agreement.

23.     HDSIS paid Horne the retention bonus as provided by the terms of the Horne

Retention Agreement.

## CODE OF BUSINESS CONDUCT AND ETHICS AND PROTECTION OF CONFIDENTIAL BUSINESS INFORMAITON AND TRADE SECRETS

24.     In or around October, 2013, HDSIS revised its Code of Business Conduct and

Ethics (hereinafter the "Code") and provided the Code to its employees, including Horne.  A true

and accurate copy of the Code is attached hereto as Exhibit B.

25.    The Code contains a section devoted to Confidential Information and Intellectual

Property, which provides in pertinent part as follows:

> Associates must maintain the integrity of confidential information and ensure that such information is used solely for its intended purpose. Confidential information typically includes valuable commercial information, owned by HDSIS or entrusted to use by suppliers, customers and others related to our business, which is competitively sensitive and not generally known to the public. It may include certain written or oral information, data or documents relating to a business, including without limitation current or prospective customer or vendor lists, pricing or rates, guidelines, manuals, standard operating procedures, personal notes, worksheets, computer data, source code, presentations, memoranda, operation, sales, promotions and marketing methods, techniques and studies, financial and corporate record, information pertaining to pending or future acquisitions, divestures or similar transaction (including information pertaining to related financings, if any). If any Associate is unsure about whether certain information is confidential, and what restrictions may apply, please contact the Legal Department.

26.    The Code also contains a section devoted to the Protection and Proper Use of

Assets, which provides in pertinent part as follows:

> Proper protection and efficient use of Company, supplier, customer and other third party assets, such as electronic communications systems, information (proprietary or otherwise), material, facilities and equipment, as well as intangible assets, is the responsibility of each Associate. Associates must not use such assets for personal profit for themselves or others and must act in a manner to protect such assets from loss, damage, misuse, theft, removal and waste.

27.    During his employment with HDSIS, Horne completed the internal course on the

Code on four separate occasions on April 30, 2009, March 2, 2010, April 14, 2011 and January

24, 2013. He also completed the online Company Policy Affirmations, acknowledging that he

had reviewed and understood all of HDSIS's policies, on January 8, 2013 and February 6, 2014.

28.    HDSIS protects its confidential business information and trade secrets through a

multi-layered security and risk management program called Secured Network Intelligence

Platform for Enterprise Risk Management ("S.N.I.P.E.R."). The program limits access to only

those employees that have a need to use HDSIS's confidential business information and trade secrets within the scope of their jobs.

## HORNE'S EMPLOYMENT BY AFD

29.     By e-mail sent at 10:07 p.m., on Sunday, August 10, 2014, Horne advised HDSIS of his resignation effective midnight that night.  A true and accurate copy of the resignation e-mail is attached as Exhibit C.

30.     Despite claiming that August 10, 2014 would be his last day, Horne agreed to work for several weeks (the "resignation notice period") so he could transition his customers to others at HDSIS. The resignation notice period ran from August 10, 2014 through September 2, 2014.

31.     When questioned multiple times by HDSIS after his initial resignation, Horne stated that he did not have another job.  HDSIS subsequently learned after his final departure from HDSIS that Horne had accepted a similar sales position with AFD.

32.     Unbeknownst to HDSIS, Horne downloaded electronic documents to various USB storage devices during his resignation notice period.  Horne did not return the HDSIS electronic documents that he downloaded to various USB storage devices during his resignation notice period.

33.     Horne's last day of employment with HDSIS was September 2, 2014.  Horne received his last paycheck (including salary, commissions and stock purchase refund) on September 14, 2014.

34.     On October 10, 2014, Susan Stucker, Vice President, Legal – Labor & Employment for HDSIS, sent a letter to Horne reminding him of his post-employment obligations in the Horne Retention Agreement and Horne's common law obligations to not use

or disclose HDSIS confidential information and trade secrets. The letter requested that Horne confirm by October 20, 2014, that (1) he would abide by the Horne Retention Agreement; (2) he had not and would not disclose HDSIS confidential information or trade secrets; and (3) he would not directly or indirectly solicit HDSIS customers or suppliers. The letter advised that should Horne fail to provide the confirmation, it would be assumed that he did not intend to honor the Horne Retention Agreement. A true and accurate copy of the letter from Susan Stucker is attached as Exhibit D.

35.     To date, Horne has not formally responded to the Stucker letter.

36.     Shortly after Horne was hired by AFD, several HDSIS employees observed Horne at various customer sites. Upon information and belief, Horne was soliciting HDSIS customers, including Winchester Homes, as an AFD employee.

37.     On December 2, 2014, an HDSIS employee received an e-mail from a Winchester Homes employee, who notified her that he is working with Horne in his (Horne's) capacity as an AFD employee. A true and accurate copy of the December 2, 2014 e-mail is attached hereto as Exhibit E.

38.     AFD is a direct competitor of HDSIS regionally and in the Northern Virginia territory. Like HDSIS, AFD is engaged in the provision of interior finish services to the building industry.

39.     AFD, in direct competition with HDSIS, provides builders and homebuyers with floor covering and interior finish products, including ceramic tile, natural stone, hardwood, carpet, countertops, window coverings and sheet vinyl.

40.     AFD maintains a design location in Chantilly, Virginia and an office in Manassas, Virginia.

8

## HORNE STOLE CONFIDENTIAL AND TRADE SECRET INFORMATION

41.     Based on Horne's failure to respond to Susan Stucker's letter by the due date of October 20, 2014 and Horne being observed at various HDSIS customer sites, HDSIS conducted an internal forensic analysis of the HDSIS laptop provided to Horne during his employment.

42.     The internal forensic analysis of Horne's laptop revealed that on August 30, 2014, four days before Horne's last day of employment with HDSIS, Horne attached a USB device, serial number AAX9G73G3QW5H6UW, to the HDSIS laptop and he accessed several electronic documents containing confidential and trade secret information related to HDSIS's customer, Winchester Homes.

43.     Horne downloaded the "Pricing Matrix Report" for Winchester Homes, which contained detailed information regarding pricing for Winchester Homes. This document is significant because Winchester Homes employs a unique pricing model, and the Pricing Matrix developed by HDSIS took significant time and research to prepare. The Pricing Matrix drives the overall profitability for the Winchester Homes account and is commercially valuable to HDSIS.

44.     Horne also downloaded a document titled "Winchester Homes Process Details", which contains a detailed step-by-step process for handling Winchester Homes.

45.     In the hands of a competitor, AFD and Horne know exactly what products to bid on, the prices and costs of those products, the quantities for Winchester Homes, and the step-by-step process for handling a Winchester Homes account. Thus, they gained an unfair advantage by Horne taking HDSIS's confidential business information and trade secrets. Horne failed to return the USB device set forth above when he turned in his HDSIS laptop and iPhone.

46.     There was no HDSIS business purpose for Horne to transfer any HDSIS documents to portable electronic storage devices from August 25-29, 2014, or August 30, 2014. Horne did not need to use portable electronic storage devices in any aspect of his job with HDSIS.  HDSIS did not authorize Horne, nor did Horne seek authorization, to transfer the documents to the portable electronic storage devices.  Horne transferred the documents to portable electronic storage devices for his use during his employment with and for the benefit of AFD.  Horne failed to return the USB devices with HDSIS's confidential business information and trade secrets on his last day of employment.

47.     On September 1, 2014, Horne sent an e-mail to his personal e-mail account, bruce_horne@comcast.net, attaching an Excel spreadsheet titled "Bruce Horne's Customers.xls". A true and accurate copy of the e-mail is attached hereto as Exhibit F.  The spreadsheet contained a comprehensive list of HDSIS customers developed and maintained by Horne during his employment with HDSIS.  The spreadsheet contained confidential customer revenue data, repair and service costs, gross margin dollars, gross margin percent of sales, labor costs and material costs, all of which constitute confidential business information and trade secrets of HDSIS.  The confidential financial information is broken out by customer, customer community and individual houses and trades, all of which constitute confidential business information and trade secrets of HDSIS.

48.     There was no HDSIS business purpose for Horne to send the spreadsheet containing confidential customer information to his personal e-mail account.  HDSIS did not authorize Horne, nor did Horne seek authorization, to transfer the spreadsheet containing confidential customer information to Horne's personal e-mail account.  Horne transferred the

10

spreadsheet to his personal e-mail account for his use during his employment with and for the benefit of AFD.

49. Horne failed to return the spreadsheet with HDSIS's confidential business information and trade secrets on his last day of employment.

## AFD SUPPORTS HORNE'S BREACHES

50. On October 31, 2014, the undersigned sent a letter via e-mail and overnight delivery to Horne, advising him of his known breaches and demanding that he immediately cease and desist his wrongful actions. The letter also demanded that Horne preserve the evidence of his wrongful actions. The letter asked for Horne to confirm by November 3, 2014, that he has taken steps to preserve the evidence. A true and accurate copy of the letter dated October 31, 2014 to Horne is attached hereto as Exhibit G.

51. On October 31, 2014, the undersigned also sent a letter via e-mail and overnight delivery to the owners of AFD, DeGeorge and Fenton. The letter advised AFD of the wrongful actions of Horne and demanded that AFD direct Horne to cease and desist from his current course of action. The letter also demanded that AFD take steps to preserve evidence related to Horne's employment with AFD. A true and accurate copy of the letter is attached hereto as Exhibit H.

52. On November 3, 2014, counsel for AFD, Stanley R. Gentile responded to the undersigned's letter on behalf of AFD. AFD denied any wrongdoing, but failed to confirm that Horne would desist from soliciting HDSIS clients in violation of the Non-Solicit terms of the Horne Retention Agreement. Instead, AFD asserted that it "will not refrain from continued business with any potential customer that may be an alleged existing customer of HDSIS so long as it is doing lawful business practices." AFD did not confirm that it would direct Horne not to

violate the terms of the Horne Retention Agreement.  AFD did not confirm that it would take steps to preserve evidence.  A true and accurate copy of the AFD response is attached hereto as Exhibit I.

53.     On November 5, 2014, the undersigned responded to opposing counsel's letter dated November 3, 2014.  The letter advised opposing counsel of what protective measures AFD should take to ensure that Horne would comply with his restrictive covenant, not use HDSIS's trade secrets and confidential business information, and confirm that the electronic and paper documents were preserved by AFD and Horne.  The undersigned outlined thirteen (13) steps to be taken in order to avoid litigation.  A true and accurate copy of the letter dated November 5, 2014 is attached hereto as Exhibit J.

54.     On November 7, 2014, counsel for AFD, Stanley R. Gentile, responded to the undersigned's November 5, 2014 letter.  AFD refused to comply with the requirements in the November 5, 2014 letter and failed to ensure that the electronic and paper documents were preserved.  A true and accurate copy of the AFD response letter dated November 7, 2014 is attached hereto as Exhibit K.

**HORNE DESTROYED EVIDENCE**

55.     Despite written notices to Horne and AFD to preserve evidence, Mr. Gentile also advised the undersigned in Exhibit K that, "Mr. Horne has assured [AFD] that he has destroyed the subject zip drive and any information pertaining to [HDSIS] in his possession."  The "zip drive" refers to the USB device referenced in ¶ 42 above.

## AFD CONFIRMED HORNE IS BREACHING HIS OBLIGATIONS TO HDSIS

56.     The November 7, 2014 letter (Exhibit K) also confirmed that Horne has and will continue to breach his non-solicitation obligations to HDSIS as described in ¶ 21 above, and that AFD supports these breaches.  In pertinent part, the letter states as follows:

> Furthermore, it appears that what you are truly requesting is that [AFD] 'screen' Mr. Horne from working with 'prospective and actual customers' of [HDSIS].  With respect to Winchester Homes, [AFD] has conducted business with this company for many years and cannot, and will not, be required to stop business now.  Mr. Horne was employed by [AFD] to service its existing clients (among other things), which he is doing and will continue to do, and not to 'solicit' any [HDSIS] customers.

## HORNE'S HIRING BY AFD IS PART OF LARGER SCHEME TO HARM HDSIS

57.     In addition to hiring Horne, at around the same time, AFD hired four HDSIS employees in Florida.  On July 18, 2014, Carl Nicholson, the Branch Manager of HDSIS's Orlando, Florida operation, resigned to join AFD.  On October 3, 2014, Chad Roy, the Senior Account Executive of HDSIS's Orlando, Florida operation, also resigned to join AFD.  On October 21, 2014, John Wunder, the Branch Operations Manager of HDSIS's Orlando, Florida operation, resigned to join AFD.  In mid-October 2014, Cumi Fox, the Production Scheduler (who reported to Nicholson) in HDSIS's Orlando, Florida operation resigned to join AFD.  This represents a concerted effort by AFD to unfairly compete against HDSIS in regions where HDSIS had a competitive advantage by improperly taking advantage of the customer relationships developed and maintained by HDSIS employees to unfairly compete against HDSIS.

### COUNT I – BREACH OF CONTRACTUAL NON-SOLICITATION COVENANT
(Horne)

58.     HDSIS incorporates by reference the information contained in the preceding paragraphs as though fully restated herein.

13

59.     Pursuant to the Horne Retention Agreement signed by Horne as a condition of his receipt of bonus payments from HDSIS, he promised that for a period of twelve months after the date that his employment with HDSIS ended, he would "not directly or indirectly solicit or attempt to solicit any business related to the business of the Company existing as of the Termination Date from any of the Company's customers or suppliers with whom [he] had business contact or about whom [he] received Confidential Information during the one-year period prior to [his] Termination date." See Exhibit A.

60.     As a result of the Horne Retention Agreement, Horne has a contractual duty to refrain from soliciting those HDSIS customers with whom Horne developed the business relationship and goodwill on behalf of HDSIS.

61.     AFD is a direct competitor of HDSIS and competes directly with HDSIS in providing interior finish services and products to the residential and commercial building industry.

62.     In his position with AFD, Horne is using the relationships that he developed with HDSIS customers and the confidential and trade secret information he took from HDSIS to solicit business from those HDSIS customers to benefit himself and AFD.  In doing so, Horne is in breach of the Horne Retention Non-Solicit terms.

63.     Horne's breach of contract is resulting in economic harm to HDSIS, including the loss of goodwill with HDSIS's customers.

64.     HDSIS seeks specific performance from Horne in the form of an injunction prohibiting him from soliciting HDSIS customers as provided by the terms of the Horne Retention Agreement.  HDSIS further seeks damages for the loss of goodwill arising from Horne's breach of contract to the extent it can be quantified.

## COUNT II – BREACH OF FIDUCIARY DUTY
### (Horne)

65.    HDSIS incorporates by reference the information contained in the preceding paragraphs as though fully restated herein.

66.    At all times that Horne was employed by HDSIS, he owed HDSIS a fiduciary duty to act in the best interests of HDSIS and to prefer at all times the best interests of HDSIS over his own.  Horne further owed HDSIS a duty to not use or disclose the confidential information of HDSIS for his own benefit or the benefit of others.

67.    Horne breached his duty of loyalty to HDSIS when he took confidential and proprietary information of HDSIS without authorization for his own use and benefit and for the use and benefit of AFD.

68.    As a proximate result of Horne's breach of his fiduciary duty, HDSIS has suffered lost goodwill, lost corporate opportunities and other damages, including but not limited to the intrinsic value of the information misappropriated.

69.    Horne's breach of fiduciary duty was willful and done with malice for the purpose of depriving HDSIS of its valuable rights, so as to merit an award of punitive damages.

## COUNT III – VIOLATION OF VIRGINIA UNIFORM TRADE SECRETS ACT
### VA CODE §§ 59.1-336, ET SEQ.
### (Horne and AFD)

70.    HDSIS incorporates by reference the information contained in the preceding paragraphs as though fully restated herein.

71.    Horne misappropriated trade secrets of HDSIS, including bid templates, pricing tools, material cost information, product listings, diagrams, and a customer list which permits AFD, through Horne, to use the HDSIS pricing and quantities information to unfairly compete for HDSIS business.

72. Horne obtained the trade secrets of HDSIS under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or to limit their use, pursuant to Va. Code § 59.1-336, namely, as an employee of HDSIS. As an employee of HDSIS, Horne was subject to the common law duty of loyalty to HDSIS, including the duty to protect his employer's trade secrets, and was further bound by the confidentiality provisions of the HDSIS Code of Business Conduct and Ethics.

73. Horne took the trade secrets without authority for his own use and benefit and the use and benefit of AFD.

74. The trade secrets misappropriated by Horne for his own use and benefit and the use and benefit of AFD derive independent economic value by not being known to the public and by not being readily ascertainable by proper means. The trade secrets allow AFD to validate and refine its methods without having to develop the tools and processes that HDSIS invested in significantly over many years.

75. HDSIS used reasonable efforts to maintain the secrecy of the trade secrets by limiting their access on the HDSIS computer system to employees with an account and password. HDSIS further required its employees, including Horne, to abide by the confidentiality provisions of the HDSIS Code of Business Conduct and Ethics.

76. Defendants have misappropriated HDSIS's trade secrets in violation of Va. Code § 59.1-336(2)(b)(2) by disclosing or threatening to disclose such trade secrets without HDSIS's consent and despite Horne's duty to maintain the secrecy of such information or limit its use.

77. Defendants have misappropriated HDSIS's trade secrets in violation of Va. Code § 59.1-336(2)(b)(3) by preparing to use or using trade secrets that they received from Horne who owed a duty to HDSIS to maintain the secrecy of such information and to limit its use.

78.    Pursuant to Va. Code § 59.1-337, HDSIS is entitled to injunctive relief to prevent threatened or further misappropriation of its trade secrets from Defendants.

79.    Pursuant to Va. Code § 59.1-338, HDSIS is entitled to actual and punitive damages from Defendants for their willful and malicious misappropriation.

80.    Pursuant to Va. Code § 59.1-338.1, HDSIS is entitled to an award of its attorney's fees.

### COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT
(AFD)

81.    HDSIS incorporates by reference the information contained in the preceding paragraphs as though fully restated herein.

82.    HDSIS has an enforceable contract with Horne that serves to protect its legitimate business and business expectancies with its customers by prohibiting Horne from using the goodwill and information he obtained through developing and maintaining the business relationship with HDSIS customers.  The Horne Retention Agreement prohibits Horne from soliciting those HDSIS customers with whom he developed and maintained the business relationship for HDSIS and about whom he obtained confidential information.

83.    AFD was aware of the valuable business relationships that Horne developed on behalf of HDSIS and hired Horne for the purpose of taking advantage of those relationships.

84.    AFD was aware of the post-employment restrictions placed on Horne by the Horne Retention Agreement.

85.    AFD intentionally interfered with HDSIS's contracts or business expectancies with Horne by improper means, specifically by encouraging and causing Horne to breach his contractual duties of non-solicitation of the customers of HDSIS.

86.     As a proximate result of AFD's actions, HDSIS has suffered lost goodwill, lost corporate opportunities and other damages.  Further, as a result of Horne's continuing breach, which serves to irreparably destroy the goodwill and valuable business relationships developed by HDSIS, there is no remedy at law that is adequate to compensate HDSIS for these injuries to the extent the injuries are irreparable and incapable of being precisely ascertained or compensable by monetary award.

87.     HDSIS requests an award of damages for the compensable injuries which have occurred to date.  Further, HDSIS requests that the Court enjoin AFD, through Horne, from contracting with, soliciting, providing services or products, or otherwise doing business with HDSIS's customers, or alternatively enjoin AFD from employing Horne for a period of one year.

**COUNT V – STATUTORY CONSPIRACY**
**VA. CODE § 18.2-499**
(Horne and AFD)

88.     HDSIS incorporates by reference the information contained in the preceding paragraphs as though fully restated herein.

89.     Based upon the overall facts and circumstances known of Horne's wrongful actions, it is reasonably believed and alleged that Horne and AFD in combined and agreed to mutually to act for the purpose of willfully and maliciously injuring the trade and business of HDSIS in Virginia, both by planning to misappropriate HDSIS's trade secrets and confidential information and to use that information through Horne to unfairly compete for the business that HDSIS provides to its customers.  The wrongful actions of Defendants are part of a larger scheme by AFD to recruit HDSIS employees in other areas of the country, in particular Florida, where HDSIS has valuable business relationships, and to wrongfully convert those relationships for the benefit of AFD.  Like Horne, other former HDSIS employees in Florida misappropriated

18

confidential, proprietary and trade secret information of HDSIS for use in their employment with AFD to unfairly compete against HDSIS.

90.     As a proximate result of the actions of Horne and AFD, HDSIS has suffered lost goodwill, lost corporate opportunities and other damages.  Further, as a result of Horne's continuing wrongful actions, which serve to irreparably destroy the goodwill and valuable business relationships developed by HDSIS, there is no remedy at law that is adequate to compensate HDSIS for these injuries to the extent the injuries are irreparable and incapable of being precisely ascertained or compensable by monetary award.

91.     HDSIS requests that the Court award it damages to be trebled, compensable injuries which have occurred to date.  Further, HDSIS requests that the Court enjoin AFD, through Horne, from contracting with, soliciting, providing services or products, or otherwise doing business with HDSIS's customers, or alternatively enjoin AFD from employing Horne for a period of one year.

92.     HDSIS also seeks its attorney's fees pursuant to Va. Code 18.2-500.

### COUNT VI – VIRGINIA COMPUTER CRIMES ACT
#### VA. CODE § 18.2-152.1, ET SEQ.
(Horne)

93.     HDSIS incorporates by reference the information contained in the preceding paragraphs as though fully restated herein.

94.     Horne violated the Virginia Computer Crimes Act (Va. Code § 18.2-152.3) by attaching USB devices to his HDSIS issued laptop and by transferring the confidential and proprietary information of HDSIS to the devices without authority.  The value of the information converted by Horne exceeds $200.00.

95.     Horne violated the Virginia Computer Crimes Act (Va. Code § 18.2-152.3) by using his HDSIS e-mail to transfer the customer list containing confidential and proprietary information to his personal e-mail account without authority.  The value of the information converted by Horne exceeds $200.00.

96.     As a direct and proximate result of the breaches by Horne, HDSIS was caused to suffer damages, including lost profits.

### PRAYER FOR RELIEF

WHEREFORE, HDSIS requests that it be awarded the following relief:

(a)     A temporary and permanent injunction enjoining Horne from employment with AFD for one year from the date of this Court's order to give effect to the language (one year non-solicitation) of the Horne Retention Agreement;

(b)     A temporary and permanent injunction enjoining Horne and AFD from using HDSIS's confidential information, proprietary information and trade secrets improperly taken from HDSIS, and enjoining Defendants from directly or indirectly contracting with, soliciting, or otherwise doing business with HDSIS's customers and prospective customers using HDSIS's confidential information, proprietary information, and trade secrets;

(c)     A temporary and permanent injunction enjoining Horne and AFD from the direct or indirect use of HDSIS's confidential information, proprietary information, and trade secrets that were disclosed or are threatened to be disclosed and ordering Horne and AFD to disclose the names and addresses of any and all persons to whom Defendants disclosed HDSIS confidential information, proprietary information and trade secrets and in what format;

(d)     A temporary and permanent injunction enjoining Horne and AFD from directly or indirectly contracting with, soliciting, or otherwise doing business with HDSIS's customers

(including, but not limited to, Weyerhauser Real Estate (Winchester Homes, Camberly Homes, Everson Homes), NVR (Ryan Homes), M.D.C. Holdings (Richmond American), and Craftstar Homes), prospective customers and AFD's customers and AFD's prospective customers where such business is obtained using HDSIS's confidential information, proprietary information and trade secrets;

(e)      A temporary and permanent injunction enjoining Horne and AFD from directly or indirectly accepting any business from HDSIS's customers (including, but not limited to, Weyerhauser Real Estate (Winchester Homes, Camberly Homes, Everson Homes), NVR (Ryan Homes), M.D.C. Holdings (Richmond American), and Craftstar Homes), prospective customers and AFD's customers and AFD's prospective customers where such business is obtained using HDSIS's confidential information, proprietary information and trade secrets;

(f)      A temporary and permanent injunction enjoining Horne and AFD from directly or indirectly soliciting for employment any individual employed by HDSIS at the time of Horne's separation from HDSIS, or otherwise inducting or enticing any such employee to leave his/her employment to work for, consult with, provide services to, or lend assistance to AFD or any other entity in violation of the non-solicitation provisions;

(g)      A temporary and permanent injunction enjoining Horne and AFD from directly or indirectly continuing to use or possess any property they converted from HDSIS, including, but not limited to, HDSIS's confidential information, proprietary information and trade secrets, and ordering that all Defendants return any such property, including, but not limited to, HDSIS's confidential information, proprietary information and trade secrets;

(h)      Order Defendants to produce for inspection and imaging all computers and other electronic storage devices and e-mail accounts belonging to, under the control of, accessible to, or operated by Horne and AFD or any agent of Horne and AFD;

(i)      An accounting by Horne and AFD of all profits received as a result of their efforts in violation of legal obligations;

(j)      All compensatory damages, including, but not limited to, lost profits, as may be determined to have resulted from the improper actions of Horne and AFD.

(k)      Punitive damages in the amount of three hundred and fifty thousand dollars ($350,000.00) against each Defendant;

(l)      Imposition of a reasonable royalty against Horne and AFD for the unauthorized disclosure or use of HDSIS's trade secrets;

(m)      Treble damages in accordance with Va. Code § 18.2-500(A);

(n)      All costs and attorney's fees in an amount to be determined at trial pursuant to Virginia Code §§ 18.2-500, 18.2-152.12 and 59.1-338.1; and,

(o)      Such other relief as the Court deems just and necessary.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all of their claims for relief that are so triable.

Respectfully submitted,

Plaintiff
Creative Touch Interiors, Inc. d/b/a HDSIS Interior Solutions

By: _____
Michael E. Barnsback (VSB No. 33113)
LECLAIR RYAN
2318 Mill Road, Suite 1100
Alexandria, VA  22314

Telephone: 703.647.5931
Facsimile: 703.647.5993
E-Mail:  michael.barnsback@leclairryan.com

Steven D. Brown (VSB No. 42511)
LECLAIR RYAN
Attorneys for Plaintiff
951 East Byrd Street
Richmond, Virginia  23219
Telephone: 804.783.2003
Facsimile: 804.783.2294
E-Mail: steven.brown@leclairryan.com